## MAY *vs.* DORSETT.

1. A new trial will be granted when the verdict is contrary to the evidence.

2. When the defendant pleads and proves a negotiable promissory note of the plaintiff's as a set-off, the legal presumption is, that the defendant was the legal owner of such note at the commencement of the suit; and to avoid such set-off, it is necessary for the plaintiff to show affirmatively that he was not, in fact, the legal holder at that time. It is not sufficient to show that the defendant had previously transferred such note to third persons.

3. One who is a bank-officer, engaged in banking, and a judge of counterfeit money, is competent to give his opinion as to the spuriousness of a bank bill, especially when he gives the facts on which such opinion is founded.

Assumpsit, in Campbell Superior Court.    Tried before Judge HAMMOND, at September Term, 1859.

This was an action of assumpsit, brought by Dorsett against May, to recover the sum of one hundred dollars, alleged to be due and owing by defendant to plaintiff, by reason of a counterfeit bank bill paid by defendant to plaintiff, for value, and received by him as a genuine bill, at and for the amount of one hundred dollars, but which bill was counterfeit, and wholly worthless and of no value.

Defendant pleaded the general issue and a set-off to the amount of $218 94, due by plaintiff to defendant on several promissory notes.

Upon the trial, plaintiff proved by W. E. Smith, that in the year 1855 he was agent for plaintiff; took certain notes of plaintiff's and shaved them off to defendant, receiving from him $300 00; after he got the money, defendant remarked that he believed it was all Georgia Railroad money; witness then turned the ends of the bills, and on an inspection of about half of each bill, replied that they were all on the Georgia Railroad Bank; he thought they were all on that Bank, but could not be positive; there were two one hundred dollar bills, the balance in small bills; after he received the money, he went immediately to Dorsett, without putting it in his pocket, and let him have it; Dorsett wanted it for Mr. Foster, and he let him have it as soon as witness carried it to

May *vs.* Dorsett.

him; don't recollect whether Thomas J. Foster, Jr. was present or not.

Thomas J. Foster testified, that he saw Smith let Andrew Foster have some $300 00; that there were two one hundred dollar bills and some small bills; one of the hundred dollar bills was on the Georgia Railroad Bank, and the other on the same Bank; that the bill sued on was one; thought it was one, but did not know; it was a bill for the same amount, with one corner torn off like the one in Court, and the same Bank; did not notice the money very particularly; was accidentally present.

Alfred Austell testified, that he was a bank officer; that Andrew Foster sent some money, some years ago, by him to Charleston to pay a debt he owed there; amongst the bills sent, was a one hundred dollar bill that was counterfeit; could not say whether the bill in Court was the one or not; in his opinion the bill in Court was a counterfeit.

To the testimony of this witness, as to the spuriousness of the bill, defendant objected, on the ground that there was higher evidence of that fact.

The Court overruled the objection, and defendant excepted.

Plaintiff then read the bill in evidence, and closed.

Defendant then, in support of his plea of set-off, read in evidence ten promissory notes on plaintiff and one James Lasseter, all dated and due in 1855, payable to W. E. Smith, except one, which was payable to defendant, amounting to $119 44; and that the notes payable to Smith were transferred to defendant before this suit was commenced.

The jury, under this evidence, found for the plaintiff one hundred dollars with interest. Whereupon, defendant moved for a new trial on the grounds:

1st. Because the verdict was contrary to law and the evidence.

2d. Because the Court erred in admitting the testimony of Austell.

3d. Because the jury found contrary to the charge of the Court, and to the defendant's set-off.

The Court overruled the motion for a new trial, and defendant excepted, and assigned said refusal as error.

TIDWELL and WOOTEN, for the plaintiff in error.

FITCH, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. The defendant in the Court below, James E. May, having plead and put in proof the notes of the plaintiff, James R. Dorsett, was entitled to have the same allowed by the jury as a set-off, and as the jury failed so to find, their verdict was contrary to evidence, and the Court erred in refusing to grant a new trial on this ground.

2. It is true, that there was proof that the defendant had, after trading for these notes on the plaintiff, transferred them to third persons, but this does not establish the fact, or even raise a presumption, that he was not the legal holder at the commencement of the suit, for both facts may be true, and probably were. The notes were negotiable, and the defendant having properly pleaded them as a set-off, the legal presumption was, that he was the holder at the commencement of the suit. The *onus* was on the plaintiff to show affirmatively that the defendant was not so in fact, and so the Court substantially charged the jury. The verdict was contrary to this charge, and the defendant was entitled to a new trial on this ground.

3. A new trial was moved for on another ground, that is, that the Court erred in admitting the testimony of the witness Austell, as to the spuriousness of the bank bill, which was the foundation of the plaintiff's action. This ground was not pressed in the argument before us. Nor do we see any good objection to the evidence. The witness was a bank officer, engaged in the banking business, and considered himself a good judge of counterfeit money. The witness not only gave his opinion, but the facts upon which this opinion was based. The objection to the evidence was on the ground that "there was higher and better evidence." What that higher and better evidence of the fact was, does not appear.

Whether there was sufficient evidence before the jury, that the defendant May did, in fact, pass and pay the bill in controversy to the plaintiff, to authorize them to so find, was much discussed before us. And although we do not put our decision on that ground, it is, nevertheless, due to the parties, and to the Court below, for us to state frankly, that in

May *vs.* Dorsett.

our opinion, it is not.  The evidence of W. E. Smith, who received the money from the defendant for the plaintiff, and amongst which this bill must have been, if it was ever passed and paid by the defendant to the plaintiff, says, at the time, in 1855, when he received the three hundred dollars from the defendant for plaintiff, the defendant remarked that he believed it was all Georgia Railroad money.  This called the attention of the witness immediately to the fact, of what kind of money was paid him, having the money then in his hand, and he turned down the ends of the bills, exposing about one-half of each bill, and looked through them, and he, the witnesss, remarked they were all on the Georgia Railroad Bank.  He thought they were all on that bank. The bill in controversy purported to be a bill on the bank of Cheraw, S. C., for $100.  Here was positive and direct evidence that the defendant passed no such bill to the plaintiff at that time ; yet, it must have been at that time or not at all.  It is not possible to see how the witness could be mistaken.  To overcome the force and effect of this evidence, and also to establish a right to recover, the plaintiff introduces but one other witness, one Thomas J. Foster, who testifies, that he was present, not when defendant delivered the bills to Smith for the plaintiff, and when this particular examination was had as to the kind of money, but when Smith delivered the money to the plaintiff; that there were two $100 bills, one on the Georgia Railroad Bank, and the other on the same bank with the one sued on.  He did not know, but thought the bill sued on was one of the bills ; it was a bill for the same amount, with one corner torn off, and on the same bank ; could not say that the bill sued on was the same, but that resembled it very much in appearance, and he thought it to be the same bill; witness was not doing business for plaintiff nor Mr. Foster ; was accidentally present; *did not notice the money very particularly*.  This evidence is pretty clear, and if true, the bill in controversy must have been one of the bills that the witness, Smith, paid over to the plaintiff.  But how it it possible for a witness who happened to be present when a sum of money was passed from the hands of one man to another, to remember, describe, and absolutely identify, the specific bills, after the lapse of four years and a half—for this is the time that intervened between the periods of passing the bill and the giving

in of his testimony—it is impossible to conceive! Add to this the fact that the witness had nothing whatever to do with the matter; had no connection with either of the parties; did not particularly examine the bills; his attention was not called to it in any way, either as to the character or kind of bills, so as to fix the particular bill or its characteristics in his mind; and the statement becomes, to say the least of it, a most extraordinary one. What a marked contrast there is between the testimony of this witness and that of Mr. Austell. This gentleman was accustomed to deal in money; he carried a $100 bill from plaintiff to Charleston to pay a debt for him; the bill was condemned as counterfeit; his attention was thus called particularly to that bill; he examined it, knew it to be counterfeit, yet he could not identify the bill in Court as the one that passed through his hands, though the witness Foster could, from an accidental glance of it as it passed through the hands of others, in a bundle of other bills, after a lapse of four years and a half! It would be useless to follow the investigation further, for, as I have already stated, this view of the evidence is not conclusive, in our own minds. Our impressions are against the sufficiency of the evidence and for the reasons I have stated. The question is an open one for the parties to press further or not, as they may consider most advisable. The new trial is ordered because the verdict was contrary to law and against the evidence, in the exclusion of the set-off pleaded and proven by defendant.

Judgment reversed.